J-S08032-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| MARQUES CURRY | : | No. 1049 WDA 2015 |

Appeal from the Order June 16, 2015
in the Court of Common Pleas of Fayette County,
Criminal Division, No(s): CP-26-CR-0000066-2015

BEFORE:  STABILE, DUBOW and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:　　　　　　　**FILED MARCH 24, 2016**

The Commonwealth of Pennsylvania appeals from the Order granting the pretrial Petition for *Habeas Corpus* relief filed by Marques Curry ("Curry"), and dismissing the charges against him.  We affirm.

The trial court set forth the relevant factual background of this case as follows:

> In October 2014, Lyn[] Furbee ["Furbee"], the victim in this case, began to notice suspicious charges on her debit card.[1]  In particular, [] Furbee noted a charge on her bank statement [from] the Uniontown Super 8 motel for $333.15. The debit was for room charges from October 1, 2014 through October 3, 2014.  She did not use the card or authorize the charge at the Super 8.  Likewise, she did not authorize a charge of $82.84 for [a separate] hotel room from October 1, 2014 through October 2, 2014[,] at the Budget Inn in Belle Vernon. At the time, [the debit/credit card itself] was not stolen, but [Furbee] had not given permission to any other individuals to use the card.

---

[1] We observe that the record is unclear as to whether the card in question is a debit or credit card.  Accordingly, we will hereinafter refer to the card as the "debit/credit card."

Officer Michael Bittner ["Officer Bittner"] of the Uniontown Police Department investigated the unauthorized activity on [the] debit[/credit] card. In [Officer Bittner's] investigation, he learned that the [debit/credit] card was used at both the Super 8 and Budget Inn. [Curry's] name was on registration forms at both hotels. In addition, [Curry] signed his own name on the registration at the Super 8. Surveillance photos from the Super 8 confirmed [that Curry] checked into the hotel on October 1, 2014.

Subsequently, Officer Bittner spoke to [Curry] at the Fayette County Prison. During the interview, [Curry] advised that he had an arrangement with Herbert Sumey ["Sumey"] regarding the hotel rooms. [] Sumey is the father of one of Furbee's grandchildren. [Curry informed Officer Bittner that Curry had] needed a place to stay, since his girlfriend had kicked him out of his residence. [] Sumey then offered to make a reservation at the Super 8 for [Curry] with ["Sumey's"] debit card in exchange for cash. [Curry] stated [] he believed [that] the card used to make the reservations belonged to Sumey. After checking out of the Super 8, Sumey and [Curry] again arranged for Sumey to reserve a room at the Budget Inn with the card in exchange for cash. [Curry] gave Sumey $150 total for the rooms.

Opinion and Order, 6/16/15, at 1-2 (footnote added; citations to record omitted).[2]

In October 2014, the Commonwealth charged Curry with two counts each of access device fraud and theft by deception, and one count of receiving stolen property.[3] The charges were bound over for trial after a preliminary hearing before a magistrate. In April 2015, Curry filed the

_____

[2] Furbee additionally testified at the hearing on Curry's Omnibus Pretrial Motion seeking *habeas corpus* relief (hereinafter "the *Habeas Corpus* Petition") that there was a total of approximately $1,300 in unauthorized charges placed on the debit/credit card. N.T., 5/28/15, at 7.

[3] 18 Pa.C.S.A. §§ 4106(a)(1)(ii), 3922(a)(1), 3925(a).

*Habeas Corpus* Petition, seeking dismissal of the charges for the Commonwealth's failure to establish a *prima facie* case. On May 28, 2015, the trial court conducted a hearing on the *Habeas Corpus* Petition, at which Furbee and Officer Bittner testified.

By an Order dated June 16, 2015, the trial court granted the *Habeas Corpus* Petition, and dismissed the charges against Curry, finding that the Commonwealth had failed to establish a *prima facie* case. The trial court ruled that the Commonwealth had failed to prove beyond a reasonable doubt the intent element of all three of the offenses of which Curry was charged, as there was no evidence that Curry knew that the debit/credit card information that was used to pay for his hotel rooms was stolen.

The Commonwealth timely filed a Notice of Appeal,[4] followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of Errors Complained of on Appeal.

The Commonwealth now presents the following issue for our review: "Whether the [trial c]ourt erred in granting [Curry's *Habeas Corpus* Petition] when the Commonwealth established a *prima facie* case of access device fraud, theft by deception, and receiving stolen property[,] in that [Curry] knowingly obtained the property of another without authorization and is

---

[4] In its Notice of Appeal, the Commonwealth properly certified that the trial court's ruling would substantially hinder the prosecution and terminate its case against Curry. ***See*** Pa.R.A.P. 311(d).

culpable as an accomplice[?]"   Brief for the Commonwealth at 1 (some

capitalization omitted).[5]

> Our standard and scope of review is as follows:
>
> When reviewing a trial court's decision to grant a *habeas corpus* petition, we will not reverse the trial court's decision absent a manifest abuse of discretion.  In order to constitute an abuse of discretion, the record must disclose that the trial court exercised manifestly unreasonable judgment or based its decision on ill will, bias or prejudice.  Furthermore, our scope of review is limited to determining whether the Commonwealth has established a *prima facie* case.

***Commonwealth v. Heckman***, 66 A.3d 765, 768 (Pa. Super. 2013)

(citation omitted).

> A *prima facie* case consists of evidence, read in the light most favorable to the Commonwealth, that sufficiently establishes both the commission of a crime and that the accused is probably the perpetrator of that crime.  The Commonwealth need not prove the defendant's guilt beyond a reasonable doubt.  Rather, the Commonwealth must show sufficient probable cause that the defendant committed the offense, and the evidence should be such that if presented at trial, and accepted as true, the judge would be warranted in allowing the case to go to the jury.
>
> In determining the presence or absence of a *prima facie* case, inferences reasonably drawn from the evidence of record that would support a verdict of guilty are to be given effect, but suspicion and conjecture are not evidence and are unacceptable as such.

***Commonwealth v. Keller***, 823 A.2d 1004, 1010-11 (Pa. Super. 2003)

(citations and quotation marks omitted).  "[W]here the Commonwealth's

case relies solely upon a *tenuous inference* to establish a material element of

the charge, it has failed to meet its burden of showing that the crime

---

[5] We note that Curry did not file a brief on appeal.

charged was committed." ***Commonwealth v. Wojdak***, 466 A.2d 991, 997 (Pa. 1983) (emphasis in original).

The Crimes Code provides, in relevant part, that that a person commits access device fraud if he "uses an access device to obtain or in an attempt to obtain property or services *with knowledge that*[] … the access device was issued to another person who has not authorized its use[.]" 18 Pa.C.S.A. § 4106(a)(1)(ii) (emphasis added).

A person is guilty of theft by deception "if he *intentionally* obtains or withholds property of another by deception. A person deceives if he *intentionally*[] creates or reinforces a false impression, including false impressions[,] as to law, value, intention or other state of mind …." ***Id.*** § 3922(a)(1) (emphasis added; paragraph break and numbering omitted).

Finally, the Crimes Code provides that "[a] person is guilty of [receiving stolen property] if he *intentionally* receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." ***Id.*** § 3925(a) (emphasis added).

All three of the above-mentioned offenses include an intent element, requiring that the accused act either intentionally or knowingly. ***See id.*** § 302(b)(1) and (2) (defining the relevant kinds of culpability); ***see also Commonwealth v. Young***, 35 A.3d 54, 62-63 (Pa. Super. 2011)

(recognizing the intent required for convictions of access device fraud, theft by unlawful taking and receiving stolen property, in a case concerning double jeopardy implications).

The Commonwealth argues that, contrary to the trial court's ruling, the evidence, viewed in the light most favorable to the Commonwealth, established that Curry knew that the debit/credit card information that Sumey used to pay for Curry's hotel rooms was stolen. *See* Brief for the Commonwealth at 6. The Commonwealth challenges Curry's assertion to the contrary:

> [Curry] states that he entered a deal with Sumey to trade cash for a room reservation. This begs the question, if Sumey had a valid [debit/]credit card, why could he not simply take out a cash advance rather than entering into this deal with [Curry?] Furthermore, [Curry's] statement reveals that he paid only $150.00 [] ($80 initial payment and a further $70 at a later date) on a bill that was over $300.

*Id.* Additionally, the Commonwealth asserts that the following language from *Young, supra*, though dicta, is instructive to this case: "[A]ccess device fraud does not necessitate proof of theft or unlawful control over movable property of another. Although access device fraud often involves theft of movable property, theft is not a necessary element because the statute prohibits mere unauthorized use of an access device." *Young*, 35 A.3d at 62. Relying on *Young*, the Commonwealth asserts that "[i]n the case at hand, though [Curry] did not physically take the [debit/]credit card,

he can still be found guilty of access device fraud for the hotel rooms." Brief for the Commonwealth at 5.

In its Opinion and Order granting the *Habeas Corpus* Petition, the trial court addressed the Commonwealth's claims as follows:

> The incontrovertible testimony at the [] hearing on [the *Habeas Corpus* Petition] was that [] Sumey and [Curry] had an arrangement whereby Sumey would use "his card" to reserve hotel rooms for [Curry], and [Curry] would pay Sumey back in cash. However, what the [trial c]ourt did not hear was any further evidence about whether [Curry] actually knew Sumey's use of the card was unauthorized. As the record now stands, Sumey professed the card to be his and [Curry] was not aware of anything to the contrary. [Curry] was never in possession of the card, but rather, Sumey called in the card number to the hotels on both occasions. In fact, [Curry] signed his own name on both hotel registries, which lends credibility to the argument that [Curry] believed he very well had Sumey's authorization to use the card.
>
> [The trial court is] certainly not oblivious to the questionable nature of the agreement between Sumey and [Curry]. … [T]he Commonwealth sensibly points out that if Sumey did in fact have a valid [debit/]credit card and was in need of cash, why did he need [Curry] to obtain a cash advance[?] The point is further puzzling when considering [that] Sumey communicated to [Curry] that the card was a debit card, and if rightfully his, Sumey could have obtained cash on his own.
>
> Yet, the [trial c]ourt cannot make assumptions in favor of the Commonwealth as a substitute for the existence of an essential element of the crimes. The Commonwealth points the [c]ourt towards dicta contained in [] **Young**[*, supra*,] as support for its case. … Even though [Curry] may have benefitted by obtaining stolen property, the hotel rooms, a reasonable possibility is that he did not know he could not use the card. Indeed, the testimony at the [] hearing on [the *Habeas Corpus* Petition] never established whether [Curry] was ever aware he was not permitted to use the card. The Commonwealth did not call [] Sumey or another witness with first-hand knowledge to elaborate on the actual agreement

between Sumey and [Curry]. … Furbee[] testified she did not know [Curry] and did not speak to [] Sumey about any charges on the card. Instead, the only testimony offered as to [Curry's] intent was regarding Officer Bittner's interview with [Curry], where [Curry] stated [that] he believed the card belonged to Sumey. Because these crimes all require the Commonwealth to prove [Curry's] knowledge[, but] the Commonwealth was unable to do so, we must … grant [the *Habeas Corpus* Petition].

Opinion and Order, 6/16/15, at 4-6 (citations to record omitted).

We determine that the trial court's foregoing analysis is supported by the law and the record, and agree with the court's ruling that the Commonwealth failed to establish a *prima facie* case against Curry. The Commonwealth's case relies upon a tenuous inference to establish the intent element of the crimes for which Curry was charged. ***See Wojdak***, 466 A.2d at 1001-02 (holding that the Commonwealth had failed to establish a *prima facie* case against the defendant for criminal conspiracy to commit theft by deception, where there was not a sufficient showing of the defendant's criminal intent). Thus, the trial court properly exercised its discretion in granting the *Habeas Corpus* Petition for the Commonwealth's failure to establish a *prima facie* case.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/24/2016

- 8 -